UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:03CR78 (SRU) |
| KENNETH MOORE | : | July 27, 2005 |

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, Kenneth Moore, respectfully submits this memorandum as an aid to the Court in carrying out its duties in light of the Second Circuit's order directing a remand of this case in light of United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

**I. Background.**

On February 27, 2004, Mr. Moore pled guilty to Count One of the Indictment charging him with identification fraud, in violation of 18 U.S.C. § 1028(a)(7). The conduct upon which Mr. Moore's plea was based occurred between June and November of 2001. The indictment did not specify a loss amount related to any of the counts of the indictment, nor did Mr. Moore stipulate or agree to a specific loss amount during the change of plea hearing. At that time the Court informed Mr. Moore that he was waiving his right to a jury trial on the offense to which he was pleading guilty, that the statutory maximum for that offense was thirty years, and that he would be sentenced by the Court under the United States Sentencing Guidelines. Mr. Moore's plea and sentencing both occurred prior to the Supreme Court's decision in Blakely v. Washington, ___ U.S. ___, 124 S. Ct. 2531 (2005). As such, the defendant's sentence was determined under the then mandatory United States Sentencing Guidelines.

On June 24, 2004, the Supreme Court decided the case of Blakely v. Washington, *supra*. In Blakely, the United States Supreme Court invalidated the sentencing procedures of the State of Washington, finding that the determinant sentencing, which increased sentences based on judicial fact-finding rather than jury fact-finding, violated a defendant's Sixth Amendment right to a jury trial. In

- 2 -

Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 435 (2000), the Supreme Court held that "other than the fact of a prior conviction, any factor that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  Blakely essentially restates the holding in Apprendi, specifically, that under the Sixth Amendment all facts used to increase a defendant's sentence beyond the statutory maximum must be charged and proven to a jury.  Cf. United States v. Terrell, 2004 WL 16661018 at *6 (D. Neb. July 22, 2004) , citing Blakely, 124 S.Ct. at 2537 and Apprendi, 530 U.S. at 483.  Pursuant to Blakely, the defendant sought appellate review of his sentence.

Following the Blakely decision, the Second Circuit determined that it would not apply Blakely to the Sentencing Guidelines pending a ruling by the Supreme Court on two cases, United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005); and United States v. Fanfan, ____ U.S. ___, 125 S. Ct. 12, (Aug. 2, 2004) United States v. Mincey, 380 F.3d 102, 103 (2d Cir. 2004).  In light of the Supreme Court's Decision in Booker this case was remanded for further proceedings.

**II. Discussion.**

The Supreme Court's recent decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005), has unshackled the Court from the Sentencing Guidelines.  While the relevant opinion in Booker still requires this Court to "consider" the Guidelines in fashioning an appropriate sentence in a given case, the Court is  no longer instructed that it "shall" impose a sentence within the Guideline range.  Id. at ___.  Instead, the Guidelines are simply now one of the several factors a court must "consider" in determining a sentence.  18 U.S.C. § 3553(a)(2).  They are "nothing more than a suggestion that may or may not be persuasive to a judge when weighed against the numerous other considerations listed in 18 U.S.C. § 3553(a)."  Id. at ___(Stevens, J., dissenting).  In effect, Booker has de-throned the Sentencing Guidelines, and  re-established § 3553(a) as the Court's benchmark for fashioning a particular sentence.

Moreover, nothing stated either in § 3553(a) nor the majority opinions in Booker requires the Court to give the Guidelines any priority over the other factors listed in § 3553(a).  Id. at ___(Scalia,

- 3 -

J., dissenting). Indeed, giving the Guidelines any sort of "presumptive" correctness would in effect resurrect them to the level of de facto "mandatory," which runs afoul of Booker. As one district court has already noted, "Booker is not an invitation to do business as usual." United States v. Ranum, 353 F. Supp. 2d 984, 987 (E.D.Wis. 2005) (emphasis added). In fact, Justice Scalia's dissent in Booker succinctly clarifies a sentencing court's liberty in arriving at an appropriate sentence, where he states,

> logic compels the conclusion that the sentencing judge, after considering the recited factors [in section 3553(a)] (including the Guidelines), has full discretion, as full as what [she] possessed before the [Guidelines were] passed, to sentence anywhere within the statutory range.

Booker, 125 S.CT at 47 (Scalia, J., dissenting).

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit reviewed Booker and explained how courts should now approach sentencing and the determination of a fair and just sentence. The Crosby Court noted that "[t]he Supreme Court's decision in Booker/Fanfan significantly altered the sentencing regime that has existed since the Guidelines became effective on November 1, 1987" Id. at 108, but it then stated that "[a]lthough the most significant aspect of the [Booker/Fanfan] Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines to select a sentence is no longer mandatory, a critically important aspect of Booker/Fanfan is the preservation of the entirety of the SRA with the exception of only the two severed provisions." Id. at 110 (emphasis added).

Under 18 U.S.C. § 3553(a), the sentencing judge must consider enumerated factors, including the Guidelines. Id. at 107. The Crosby Court advised that the statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range" and "[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan." Id. at 112. While the sentencing judge must determine the Guidelines range in order to "consider" it, Crosby expressly declined to "determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range." Id. at 113. What the sentencing court must do, then is "consider the Guidelines and all of the other factors listed in section 3553(a)." Id. at 112 (emphasis added). Ultimately, after

- 4 -

considering the relevant factors, and given the fundamental point that "the Guidelines are no longer mandatory" Id. at 113, the sentencing judge must decide "whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." Id.

With this perspective in mind, and looking now to § 3553(a) as the Court's guidance, the first compelling aspect of the statute is its mandate that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the [articulated] purposes [of sentencing]." 18 U.S.C. § 3553(a). The statute also requires that the Court, in coming to a sentence, "shall consider the nature and circumstances of the offense and the history and characteristics of the accused." Id.

### III. Downward Departure Grounds.

The Defendant submits that, in light of the decisions in Booker and Crosby, this Court now has greater discretion to depart than it did under the mandatory system. As such, he proposes the following grounds for a downward departure for the Court's consideration: 1) The defendant's successful rehabilitation from cocaine addiction; 2) The defendant's consistent and outstanding contributions to the community and his family obligations; 3) Considerations under 18 U.S.C. § 3553; 4) A combination of factors.

#### 1. Defendant's Successful Rehabilitation.

Mr. Moore submits that, prior to sentencing, he successfully addressed and overcame his serious cocain addiction which largely contributed to the economic crimes which form the basis for this case. While Mr. Moore concedes that he has a somewhat checkered past, this prosecution represents his first and only prolonged economic fraud, the only crime for which he has been sentenced to a period of incarceration and the most serious crime in his criminal history. It is not surprising that Mr. Moore committed this serious of frauds during a time in which his cocaine habit had engulfed his life. While his cocaine habit clearly cannot excuse his conduct, it does help to explain how a man who has dedicated his life to serving his community and family would suddenly embark on a spending spree culminating in the purchase of two trucks, a luxury vehicle and a boat.

- 5 -

Upon coming to the realization of his serious drug addiction, Mr. Moore faithfully attended Elm City Counseling and remained drug-free while in that program for a period of approximately three months. Following his treatment with Elm City, Mr. Moore then enrolled himself at the Northside Drug Treatment program, which he attended group sessions periodically in association with individual counseling. He remained drug free throughout his involvement in the program. He also availed himself of personal one-on-one counseling and was attending two NA meetings a week, targeted primarily at understanding more about what triggered his drug abuse, and how to identify and avoid similar triggers in the future. For the year prior to his incarceration, the defendant successfully abstained from using illegal drugs and actively sought out and participated in treatment programs which helped him achieve and maintain his sobriety.

Where a defendant's drug addiction has led him to commit economic crimes, and where he or she has made strong rehabilitative efforts, our district has on numerous occasions departed downward even to probation or "time served." Such sentences have been previously imposed for federal prosecutions in this district involving multiple bank robberies and drug sale prosecutions which had ten-year mandatory minimum sentences. In those cases, the defendant's crimes were not so much an indication of the severity of the defendants' propensity for crime as much as an indication of the severity of their narcotics addiction. See e.g., United States v. Neil Schmidt, 3:00CR125 (AHN) (as a result of defendant's extremely committed rehabilitative efforts, his efforts pursuant to § 5K1.1, and his history of Post-Traumatic Stress Syndrome, defendant sentenced to probation in drug prosecution otherwise mandating minimum sentence of ten years); United States v. Lozada, 3:00CR00155(SRU) (defendant who committed multiple bank robberies resulting from her severe drug addiction and traumatic childhood history of abuse sentenced to probation, is now successfully employed, and successfully completed all stages of a several-year drug rehabilitation period); United States v. David Curry, 3:97CR154 (AWT) (multiple bank- robbing defendant who was sexually molested and also exposed to multiple traumatic deaths as child, whose trauma resulted in severe drug addiction and lengthy history of property and drug crimes; defendant successfully completed drug rehabilitation as condition of

sentence of time-served) ; United States v. Benjamin Green, 3:98CR71 (JCH) (multiple bank-robbing defendant with history of severe childhood abuse by father led to severe heroin addiction with resulting history of narcotics offenses and check offenses; downward departure to probation warranted largely due to his extraordinary drug rehabilitation); see United States v. Gilbert Rodriguez, 3:97CR88 (PCD) (bank-robbing defendant whose mother died when defendant was very young, was raised by very stern father who frequently physically disciplined defendant, and who developed a severe heroin addiction; downward departure to probation warranted based largely on defendant's extraordinary drug rehabilitation).

The Second Circuit has recognized that a defendant's awareness of his circumstances, along with his demonstrated willingness to act to achieve rehabilitation is a valid ground for a downward departure. United States v. Maier, 975 F.2d 944, 948 (2d Cir 1992); United States v. Workman, 80 F.3d 688, 701 (2d Cir. 1996); United States v. Core, 125 F.3d 74, 77 (2d Cir. 1997). While a downward departure is not warranted simply as the result of a defendant's entry into a rehabilitation program, his sustained commitment to that course of rehabilitation does constitute a recognized ground for departure. Maier, supra at 948. In adopting this view, the Second Circuit explicitly rejected the view that rehabilitation is no longer an appropriate sentencing goal under the sentencing guidelines. Id. at 946-47. Rather, the Second Circuit has emphasized the mandate of 18 U.S.C. § 3553(a)(2)(D), requiring the sentencing courts to consider "providing the defendant with needed. . . medical care or other correctional treatment in the most effective manner." Id. The Second Circuit has thus recognized that in appropriate cases where a defendant has demonstrated his willingness to achieve rehabilitation, that the sentencing court may depart in order to place defendant on probation to enable him to obtain the "needed . . . medical care, or other correctional treatment in the most effective manner." Id. at 946-48.

The Second Circuit has also provided some guidance as to when such a downward departure is appropriate. A downward departure to effect rehabilitation is appropriate where the court has conscientiously examined the circumstances relating to the defendant's rehabilitation, which may

include: "the nature of defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of her progress toward rehabilitation and the hazards of interrupting that progress." Id. at 948-49.

Mr. Moore made a commitment, more than a year prior to his sentencing for the instant offense, to achieve sobriety and overcome his debilitating drug addiction. He demonstrated his commitment to his rehabilitation by seeking treatment and fully availing himself of all services available to treat his addiction. As a result of the defendant's tremendously successful results a downward departure is warranted.

**2.     The Defendant's Contributions to the Community and His Family Obligations.**

In United States v. Rioux, 97 F.3d 648, 659 (2d Cir. 1996), our Circuit recognized that while a defendant's very modest charitable community efforts did not provide grounds for a downward departure in and of themselves, taken together with another ground, his ailing physical condition, it took defendant's case out of the heartland. Here, Mr. Moore's contributions to the community have been far more significant than those made by the defendant in Rioux. Moreover, here, Mr. Moore has far more compelling circumstances than the defendant in Rioux, in his extraordinary rehabilitative efforts.

In addition, the Second Circuit has recognized as a grounds for departure the defendant's family obligations. In United States v. Galante, 111 F.3d 1029 (2d Cir. 1997), the Second Circuit held that the district court did not abuse its discretion in determining that extraordinary family circumstances warranted a downward departure from adjusted offense level 23 to adjusted offense level 10. The defendant in Galante was the primary breadwinner of the family. Most importantly, even though the defendant-husband was married, and his children could be taken care of by his wife, the Court found that a departure was warranted. In United States v. Johnson, 964 F.2d 124 (2d Cir. 1992), the Second Circuit affirmed a 13-level downward departure in a bribery and theft of public money case also based on extraordinary family responsibilities because the defendant was solely responsible for the upbringing of four young children, including an infant and young child of the defendant's institutionalized daughter.

- 8 -

See also, United States v. Alba, 933 F.2d 1117 (2d Cir. 1991) (downward departure for extraordinary family responsibilities affirmed where defendant was married for 12 years, had two young daughters, lived with and cared for a disabled father, held two jobs to support family, and close-knit family's stability depended on the defendant's presence); and United States v. Sharpsteen, 913 F.2d 59 (2d Cir. 1990) (sentencing court is not precluded as a matter of law from taking into account family ties and responsibilities when deciding downward departures).

Previous defense counsel outlined at length Mr. Moore's contributions to his family and to his community. Mr. Moore's contributions were further supported by numerous letters submitted by family members and members of the community who benefitted from his time and generosity. The most striking aspect of the defendant's reference letters was the praise that he has received for his contributions to the community, particularly in guiding young people down the right life's path. Defense counsel will not belabor the issue further, but would respectfully remind this Court of the many kind letters of reference discussed in detail in counsel's Supplemental Memorandum in Aid of Sentencing dated May 17, 2004. (Attached hereto as Exhibit A).

Kenneth Moore has been an inspiration and source of emotional support to his extended family to an extraordinary fashion. In combination with his contributions to the community, his extraordinary family responsibilities, obligations, and leadership warrant a downward departure.

**3.    Considerations under 18 U.S.C. § 3553.**

Under 18 U.S.C. §3553, Congress set forth various criteria that judges must consider in sentencing defendants. Specifically, judges should consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C)  to protect the public from further crimes of the defendant;
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;...

18 U.S.C. §3553. Under § 3553, a sentencing court is required to fashion a sentence that is "sufficient,

- 9 -

**but not greater than necessary**..." (emphasis added).

Under the new sentencing scheme outline in Crosby, a sentencing Court must consider both the guidelines and the factors enumerated in the statute. A sentence of 43 months is greater than what is necessary to achieve the factors set forth in 18 U.S.C. § 3553, in that a much shorter sentence would more than adequately punish Mr. Moore while simultaneously protecting society and deterring similar conduct. Mr. Moore has never previously been incarcerated because his prior crimes have been purely economic and of a relatively minor nature. Any period of incarceration for Mr. Moore has a disproportionately greater deterrent effect on him than on someone who has experienced life in prison on more than one occasion. Mr. Moore has now been incarcerated for the past year, during which time he has had the opportunity to consider and fully appreciate the wrongfulness of his prior conduct. Mr. Moore is no longer the man he was a year ago; he now has the imprisoned man's appreciation of freedom and deeply regrets the thoughtless behaviors that led to his current predicament. Now that Mr. Moore has successfully come to grips with his cocaine problem he is in a better position to focus his energies toward living a law-abiding, productive and fulfilling life.

**4.     Combination of Factors.**

Should this Court determine that none of the grounds stated above individually justify a sentence of substantially less than 43 months, collectively, they would provide ample grounds to depart when considering United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996).

**IV.     Conclusion.**

Mr. Moore's long history of cocaine abuse was a motivating factor behind his conduct in the present case. His awareness of his need for drug rehabilitation and his efforts at achieving and maintaining his sobriety, as well as his significant contributions to his family and the community demonstrate his appreciation of the wrongfulness of his conduct and the need to change his ways. Mr. Moore respectfully requests that the Court take these unique and mitigating circumstances into account when imposing sentence in this case.

                                                                            Respectfully submitted,

- 10 -

|  |  |
|---|---|
| | THE DEFENDANT,<br>Kenneth Moore |
| | THOMAS G. DENNIS<br>FEDERAL DEFENDER |
| Dated: July 27, 2005 | /s/<br>Deirdre A. Murray<br>Assistant Federal Defender<br>2 Whitney Ave., Suite 300<br>New Haven, CT 06510<br>Bar No. Ct22981<br>(203) 498-4200 |

CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Aid of Sentencing has been mailed to Robert Spector, Assistant United States Attorney, Federal Building, 450 Main Street, Hartford, CT 06103, on this 27th day of July 2005.

/s/

Deirdre A. Murray